# IN THE COURT OF APPEALS OF IOWA

No. 23-1853
Filed October 2, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**RICHARD EUGENE NOLL,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Muscatine County, Stuart Werling, Judge.

Richard Eugene Noll appeals his conviction for possession of a controlled substance. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

Katherine Sears of Clark and Sears Law, PLLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

Richard Eugene Noll appeals his conviction for possession of a controlled substance, challenging the denial of his motion to suppress evidence obtained as a result of a traffic stop. Upon our review, we affirm in part, reverse in part, and remand with directions.

## I.     *Background Facts and Proceedings.*

On May 3, 2022, Noll was driving to his cousin Julie's home. Muscatine County Sheriff's Office Deputy Jacob Walker followed him. Walker later testified that he thought the driver was impaired because in his experience, most impaired drivers "have been late evening into early morning hours." He stated that the truck was driving ten miles per hour under the posted speed limit "along the center line" and "weaving within its lane." Walker also observed an issue with the rear license plate light, testifying the light "was too reflective" and obscured part of the plate. It was not until Noll slowed down to turn into his cousin's driveway that Walker was able to read the plate number. Walker initiated a traffic stop, activating his squad car lights, and parked behind Noll's truck in Julie's driveway.

When Walker approached the vehicle, he testified that he "detected an odor of marijuana that was coming from inside the vehicle." He also noticed an open container of beer in one of the cup holders. When questioned, Noll denied smoking marijuana or drinking. Throughout their interactions, Noll was compliant albeit "argumentative." Walker asked Noll to exit the vehicle and patted him down. When this yielded no results, Walker then searched the vehicle, which also did not reveal anything, although Walker testified he "did detect the odor of marijuana throughout." Walker then searched Noll's person and discovered two small, clear

baggies containing methamphetamine. Walker arrested Noll. While transporting Noll to Muscatine County Jail, Walker testified that he thought Noll was impaired because Noll "continued muttering to himself in the back seat."

At the jail, Walker put Noll through a series of field sobriety tests, which ended with mixed results. Noll passed the horizontal gaze nystagmus test but failed both the walk-and-turn and one-leg-stand tests. Walker invoked implied consent and obtained a urine sample from Noll, which tested positive for amphetamine.

Noll was ultimately charged with possession of a controlled substance, third offense, and operating while intoxicated, second offense. He moved to suppress the methamphetamine, field sobriety test results, and urine sample test results, citing several constitutional violations. After a hearing, the court denied his motion, finding there were reasonable grounds for the traffic stop. Noll moved to enlarge, requesting the court to consider the other alleged constitutional violations. The court filed a supplemental order, resolving additional issues. Noll moved again, asking the court to consider his search-incident-to-lawful-arrest argument. The court denied his second motion to enlarge.

The parties stipulated to a trial by the minutes and admission of certain exhibits. The court found Noll guilty of possession of a controlled substance but dismissed the operating-while-intoxicated charge. Noll appeals his conviction, citing the denial of his motion to suppress on multiple grounds.

## II.     Review.

We review suppression rulings for constitutional issues de novo. *State v. Fogg*, 936 N.W.2d 664, 667 (Iowa 2019). "We examine the whole record and make

an independent evaluation of the totality of the circumstances." *Id.* (cleaned up) (citation omitted). While not binding, we do "give considerable deference to the trial court's findings regarding the credibility of the witnesses." *State v. Tyler*, 830 N.W.2d 288, 293 (Iowa 2013) (citation omitted).

### III.     Discussion.

Both the United States and Iowa Constitutions protect individuals from unreasonable intrusion and "seizure" by law enforcement. *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8; *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004). Noll contends that his constitutional rights were violated and the evidence obtained as a result of such violations should have been suppressed at trial. *See State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) ("Evidence obtained in violation of these provisions is inadmissible, regardless of its relevancy or probative value."). We consider each of his claims in turn.[1]

*A. Lawful Initiation of the Traffic Stop.*

Noll first argues that the initiation of the traffic stop was itself illegal because he had a "legitimate expectation of privacy" in Julie's driveway and that Walker committed a trespass and "gathered evidence by exploiting his unlicensed physical intrusion on to the private driveway."[2] But this is not the correct standard; Noll is

---

[1] While Noll also claims Walker "unconstitutionally extended the length of time" of the stop, we do not reach the merits of this issue because we remand on other grounds.

[2] In making this contention, Noll relies on a city code that requires drivers to obtain consent prior to parking on private property. But such argument was not made below and is therefore not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

conflating his traffic-stop claim with that of evidence collection or searches of private property, and he is attempting to subvert Walker's authority to detain him. *See State v. Legg*, 633 N.W.2d 763, 772 (Iowa 2001) (noting that we do not "reward[] the evasion of lawful police authority by allowing suspects who make it to [a protected place] steps ahead of law enforcement officers to claim sanctuary"). Instead, Iowa courts have treated traffic stops more akin to that of a *Terry* stop. *See Kreps*, 650 N.W.2d at 642 (applying a "*Terry*" stop analysis under *Terry v. Ohio*, 392 U.S. 1 (1968)). We similarly do so now.

In denying the motion to suppress, the court found that Noll obstructed his license plate in violation of Iowa Code section 321.37(3) (2022),[3] which provided sufficient basis for the traffic stop. While "[a] traffic stop is unquestionably a seizure under the Fourth Amendment," *see Tyler*, 830 N.W.2d at 292, such stops do not require probable cause. *Kreps*, 650 N.W.2d at 642 ("The evidence justifying the stop need not rise to the level of probable cause."). In initiating the stop, the officer was detaining Noll "for investigatory purposes" and was allowed to make such a stop "based on a reasonable suspicion that a criminal act has occurred or is occurring." *Id.* at 641. "Whether reasonable suspicion exists for an investigatory stop must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time the decision to stop is made." *Id.* at 642. Based on the record before us, we find there is beyond reasonable suspicion that Noll committed a minor traffic violation. *See*

---

[3] The State also cites section 321.388 (requiring a "rear lamp" to illuminate the registration plate "and render it clearly legible") and Noll's alleged impairment as additional justifications. Because we find the traffic stop initiation was justified, we need not consider these arguments.

Iowa Code § 805.8A(2)(f), (3)(*l*) (designating a violation of section 321.37 as a minor traffic offense). "[W]hen a peace officer observes a violation of our traffic laws, however minor, the officer has probable cause to stop a motorist." *Tyler*, 830 N.W.2d at 293 (citation omitted). Noll's claim that "the State offered no evidence supporting" a violation of section 321.37(3) is incorrect. Walker testified that he observed that "an open light bulb" was covering part of the plate, and he was unable to read the characters until he "was nearly on the rear bumper." The court found Walker's testimony highly credible, stating "his visual clarity would be far in excess of the clarity of the video presented," and we give deference to such credibility determinations. *See id.* Accordingly, we find that the initiation of the traffic stop was supported by not only reasonable suspicion but even probable case. We therefore decline to suppress evidence based on this issue.

*B. Lawfulness of Search of the Defendant's Person.*

During the traffic stop, Walker conducted a full search of Noll's person.[4] But, as we alluded to in our earlier discussion of the procedural history, the district court never ruled on this issue.

Among other arguments, Noll's motion to suppress in the district court urged suppression of the methamphetamine discovered on the full search of his person as unconstitutional. The State responded to the issue in its resistance, under a heading titled "Search of Defendant's Person." And the issue was litigated at the

---

[4] Walker also patted down Noll's outer clothing just before searching the vehicle. While Noll contends this encounter was in violation of his constitutional rights, we do not consider the merits of the "pat down" because it did not result in any discovered contraband and there is no evidence to suppress stemming from the pat down.

suppression hearing. In a post-hearing supplemental filing, Noll again urged suppression of the methamphetamine, under the heading: "Unlawful Search of Richard Noll's Person."

Despite this briefing, the district court's initial order on the motion to suppress only addressed the propriety of the traffic stop and the search of the vehicle. Noll filed a "request for expanded and additional rulings," requesting the court address the other issues he raised, including but not limited to the "warrantless search of [his] person." The court entered a supplemental ruling addressing some of the claims. This ruling referred to the "pat down" search, and erroneously suggested this is how the methamphetamine was found. But the ruling never addressed the full search of Noll's person.

Noll filed a second "request for expanded and additional rulings," expressly reiterating that the pat-down search did not reveal incriminating evidence and the court "did not address the subsequent full-blown search of Noll's person." The court denied this motion with no explanation beyond: "DENIED."

Under our case law, Noll preserved error on this issue by filing the motion to expand and informing the court it had failed to resolve his claim. *See Meier*, 641 N.W.2d at 539 (allowing a party to preserve error through postruling motions "when the district court *fails to resolve* an issue" (citation omitted)). So we are left in the unusual situation where error was preserved but we have no ruling to review. *See Lamasters v. State*, 821 N.W.2d 856, 863 (Iowa 2012) (finding "a motion raising the court's failure to decide a purely legal issue" still preserves error).

While we can sometimes rule on a suppression issue without the benefit of an underlying ruling so long as we have a developed record, we are reluctant to

do so here for a few reasons. First, we lack fact findings directly relevant to deciding whether the search was conducted incident to arrest, and there is competing evidence or interpretations of the evidence regarding when the arrest began. As an appellate court, we are not fact-finders, and we rely on the trial courts' role as fact-finder even in cases that include video evidence. *See State v. Davis*, No. 23-0794, 2024 WL 4039570, at *9 n.5 (Iowa Ct. App. Sept. 4, 2024) (citing Eric J. Magnuson & Samuel A. Thumma, *"Same As It Ever Was": Why Audio-Video Recordings In and of Trial Court Proceedings Should not Change the Standard of Appellate Review*, 24 J. App. Prac. & Proc. 213, 215 (2024)). Second, there is at least one implicit credibility finding in the district court's ruling on the other issues (crediting the deputy's testimony that Noll's vehicle smelled of marijuana as a basis for one or more searches) such that we are hesitant to find facts on a cold record when the district court has already made choices about the believability of certain witnesses. And third, the lawfulness of the search of Noll's person is a mixed question of law and fact turning in part on when the arrest began—not a pure question of law amenable to correction without the benefit of an underlying ruling. These reasons all counsel in favor of a remand rather than us deciding the question for the first time on a cold record.

Because we lack a ruling or the necessary fact-findings to evaluate the lawfulness of the search of Noll's person leading to the discovery of methamphetamine, we reverse and remand to the district court with directions to promptly decide that issue by written ruling containing fact-findings sufficient to permit appellate review. *Cf. State v. Hillery*, 956 N.W.2d 492, 501 (Iowa 2021) (reversing and remanding with directions for a new suppression hearing on

additional issues when the appellate court lacked fact findings necessary to decide the issues); *State v. Sefcik*, No 02-1801, 2004 WL 149958, at *6 (Iowa Ct. App. Jan. 28, 2004) (similar, with directions on what issues to address and emphasizing the importance of fact findings and credibility determinations).  The ruling must include analysis of whether the search of Noll's person was lawful as a search incident to arrest.  The district court may determine whether it wishes to rule on the existing pleadings, hold a reported hearing with oral argument, or invite additional clarification from the parties.

### IV.    *Disposition.*

We affirm the district court's ruling on the validity of the traffic stop but reverse and remand with directions to decide the lawfulness of the search of Noll's person leading to the discovery of methamphetamine as outlined in this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**