# IN THE COURT OF APPEALS OF IOWA

No. 21-0221
Filed September 1, 2021

**IN THE INTEREST OF E.D.,**
**Minor Child,**

**A.D., Father,**
     Appellant,

**S.M., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A father and mother separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Jessica J. Chandler of Chandler Law Office, Windsor Heights, for appellant father.

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Erin E. Romar of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., Greer, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**TABOR, Presiding Judge.**

Extensive substance-abuse histories and the ongoing struggle to address their addictions prevented Sarah and Aaron from safely parenting their son, E.D., who was born in March 2019. Despite several attempts, neither parent made sustained progress during the eleven months E.D. was out of their care, and the juvenile court terminated their parental rights. Now the parents separately appeal that order, challenging the statutory grounds for termination and seeking additional time to reunify with E.D.

After a full review of the record, we reach the same resolution as the juvenile court.[1] During the nearly yearlong proceedings, neither Sarah nor Aaron could sustain sobriety for a significant period. So termination was proper with no delay in permanency.

This child-welfare case opened in November 2019 when the Iowa Department of Human Services (DHS) started offering voluntary services to E.D.'s family. The DHS suspected Sarah had been using methamphetamine while caring for the infant. An early safety plan placed E.D. in Aaron's care. But after he allowed Sarah to also live in the home, the parents consented to E.D.'s removal to a relative's care in February 2020. The child never returned to parental care.

During the next six months, Sarah and Aaron did little to address the DHS concern that they could not safely care for E.D. while using controlled substances. In September 2020, the State petitioned for termination of their parental rights,

---

[1] Our appellate review is de novo. *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021). We accord weight to the juvenile court's factual findings, but they do not dictate our result. *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). And always, the child's best interest is our North Star. *See id.*

citing Iowa Code section 232.116(1) (2020), paragraphs (g),[2] (h), and (*l*). The court originally set the termination hearing for November 2020 but postponed it until January 2021 because the parents appeared to be making progress. But evidence presented at the termination hearing showed their efforts at treatment were too tenuous to ensure a safe reunion with E.D. On top of the substance-abuse concerns, the hearing revealed that both parents had unmet mental-health needs.

The juvenile court aptly summarized the situation:

> These parents both have unresolved substance issues. They have chosen to remain together. In October, Sarah and Aaron married. Their individual sobriety is linked to each other's progress. Both have struggled with sobriety. Both have struggled to honestly address their substance abuse history. While they may be in a better position than a year ago, they have not conquered the issues that led to [E.D.'s] removal.

The court terminated Sarah's rights under section 232.116(1), paragraphs (g), (h), and (*l*), and terminated Aaron's rights under paragraphs (h) and (*l*). Both parents challenge those statutory grounds.[3]

When the juvenile court relies on more than one statutory alternative, we may affirm on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraph (h). For that alternative, the State must prove by clear and convincing evidence: (1) E.D. was three years of age or younger; (2) he had been adjudicated as a child in need of assistance under section 232.96; (3) he had been removed from the physical custody of his parents for at least six months of the last twelve months; and (4) he could not be returned

---

[2] The court previously terminated Sarah's parental rights to two other children.
[3] Termination proceedings are—both factually and legally—separate adjudications of the rights of each parent. *See In re D.G.*, 704 N.W.2d 454, 459 (Iowa 2005). So we consider each parents' claims on their own merits.

to his parents' custody as provided in section 232.102 at the present time. *See* Iowa Code § 232.116(1)(h); *see In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (interpreting "at the present time" to mean the date of the termination hearing).

Sarah and Aaron only dispute the fourth element. Aaron contends he never "directly put the child's safety at risk with his substance abuse." Sarah admits she "struggled in the first several months to pull herself away from the strong grip of addiction." But she insists she has "shown significant progress and dedication to being sober and to safely provide care for her son."

Contrary to the parents' positions, the State presented clear and convincing evidence that their long histories of substance abuse and lackluster efforts at testing and treatment during this case meant E.D. could not be safely returned to the care of either parent at the time of the termination hearing.

Since the DHS first opened its case, Aaron's prospects have not sufficiently improved. He failed to complete several substance-abuse programs, failed to undergo recommended mental-health treatment, and as recently as one month before the termination hearing tested positive for methamphetamine. Given his ongoing drug use, Aaron was not a safe parent for E.D. *See In re J.S.*, 846 N.W.2d 36, 37 (Iowa 2014) (recognizing methamphetamine use as a justification for state intervention). As for Sarah, after she completed an inpatient program in late September 2020, she did not engage in the recommended level of aftercare. She was also less than forthcoming with her therapist during outpatient visits. The court also recognized that she had a pattern of maintaining sobriety for short stints, then making "unsafe choices." The record supports termination under paragraph (h).

Both Sarah and Aaron request more time to prepare for reunification. Sarah contends delaying permanency would not result in additional harm to E.D.—particularly because he is in a relative placement. *See* Iowa Code § 232.116(3)(a) (allowing court discretion not to terminate when a "relative has legal custody of the child"). This argument falters on two grounds. First, our record does not show that the relative caring for E.D. has "legal custody." *See A.M.*, 843 N.W.2d at 113. Second, the termination ruling states that neither parent asked the court to apply an exception under section 232.116(3). Thus Sarah did not preserve an argument under the permissive exceptions, and we will not consider it for the first time on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

In general, to grant a parent a reprieve from termination, a court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Neither parent has shown that their deep-seated addictions would not be a concern in another six months. *See In re A.B.,* 815 N.W.2d at 778 (looking to past performance as leading indicator of potential for future parenting deficiencies). On this record, delaying permanency is not a good option for E.D.

**AFFIRMED ON BOTH APPEALS.**