**IN THE COURT OF APPEALS OF IOWA**

No. 24-1707
Filed January 23, 2025

**IN THE INTEREST OF I.G.,**
**Minor Child,**

**G.T., Mother,**
        **Appellant.**

_____

Appeal from the Iowa District Court for Union County, John D. Lloyd, Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED**.

Deborah L. Johnson of Deborah L. Johnson Law Office, P.C., Altoona, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Chira L. Corwin of Corwin Law Firm, Des Moines, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**SCHUMACHER, Presiding Judge.**

A mother challenges the statutory grounds relied on by the district court for termination of her parental rights to a one-year-old child, asserts termination is not in the child's best interest, requests a six-month extension to work toward reunification, and argues that a guardianship should be established in lieu of termination. Upon our review, we affirm on the issues preserved for appellate review.

## I.      Background Facts and Proceedings

I.G. was born in February 2023 and came to the attention of the Iowa Department of Health and Human Services (HHS) at just three months of age due to physical injuries for which the parents could not provide a credible explanation. The parents, who lived together, continued to provide inconsistent and noncredible explanations for the baby's injuries. I.G. was removed from parental custody in May 2023.

The mother initially denied knowledge as to the cause of the baby's injuries. About a month after I.G.'s removal from parental custody, the mother reported to HHS that the father had caused I.G.'s injuries. The mother reported the father told her he punched the baby and that his fingernails "may" have caused the marks on the baby's face. The mother also reported that the father would call the baby a "bitch," threatened to throw the baby across the room, and also threatened to kill the baby.

HHS completed a founded child abuse assessment in June 2023 for both physical abuse and denial of critical care, listing the father as the perpetrator for

physical abuse and both parents as perpetrators for denial of critical care. The assessment detailed the baby's injuries as

> bruising on her back. The bruising starts around her shoulder blades and runs down to her tail bone. Bruising covers the width of her back. The discoloration ranges in color and is shades of purple, brown, and yellow in different areas. Medical notes indicate [I.G.] has large areas of ecchymosis (bruising) on the posterior trunk from base of neck down to just about the diaper area.

The report also noted that I.G. had "abrasions on her face. The marks near her eyes are approximately an inch in length. There are 3 to 4 abrasions total. These marks are just under her eyes. They are bright red in color and seem inflamed."

I.G. was adjudicated by consent of the parties as a child in need of assistance pursuant to Iowa Code section 232.96A(2), 232.96A(3)(b), and 232.96A(14) (2023). The mother was ordered to undergo various evaluations and participate in services. In July 2024, the father entered a plea of guilty via an *Alford* plea to child endangerment, a class "D" felony, and was sentenced to prison.

While the mother initially engaged in some services, she ceased participation in February 2024, eight months before the termination hearing. Her visits with I.G. remained fully supervised. At the time of the termination hearing, the mother was residing with the father's mother. The mother stated her intention to continue a relationship with the father after his release from prison.[1] The mother also reported that she intended to have the father in I.G.'s life if her parental rights remained intact.

---

[1] A family centered services worker reported that the mother and father were engaged, and the mother intended to have another baby with the father once he was released from prison.

The district court terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (h) and (i) (2024). The mother challenges the statutory grounds, argues termination is not in the child's best interest, requests an extension of time to work toward reunification, and requests that a guardianship be established in lieu of termination.[2] We address each of the mother's arguments in turn.

## II. Standard of Review

We review the termination of parental rights de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "[T]hus 'it is our duty to review the facts as well as the law and adjudicate rights anew on those propositions properly preserved and presented to us.'" *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981) (citation omitted). In reviewing the decision to terminate, "[o]ur primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Statutory Grounds

When the district court terminates parental rights on more than one statutory ground, we may affirm on any ground we find supported by clear and convincing evidence. *In re A.B.*, 815 N.W.2d 764, 775 (Iowa 2012). We elect to address the termination under Iowa Code section 232.116(1)(h), which allows the district court to terminate the rights of a parent if all of the following have occurred: (1) the child is three years of age or younger, (2) the child has been adjudicated a child in need of assistance pursuant to section 232.96, (3) the child has been removed from the physical custody of the child's parents for at least six months of the last twelve

---

[2] The father consented to the termination of his parental rights. He is not a party to this appeal.

months, or for the last six consecutive months, and any trial period at home has been less than thirty days, and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother appears to challenge only the fourth element—whether the child could be safely returned to the mother's custody at the present time.[3]  She argues that because the abuse was inflicted by the father and "[t]he father is now in prison, [t]he child is no longer in danger of serious risk."  But this argument ignores the culpability of the mother in the abuse of I.G.  The mother was living in the same home and did not report the abuse.  And she did not seek medical treatment.  She was listed as a perpetrator for denial of critical care in an HHS founded abuse assessment.  The mother has continued in a relationship with the father despite his plea of guilty to child endangerment and has been unable to commit to keeping I.G. from the father once he is released from prison.[4]  And the mother ceased participating in services eight months before the termination hearing.  I.G. could not be safely placed in her mother's custody at the present time.[5]

---

[3] While the mother does not challenge the first three elements, on our de novo review we observe that I.G. is under three years of age, was adjudicated as a child in need of assistance, and has been out of parental custody at least six months of the last twelve months, or for the last six consecutive months, and any trial period at home has been less than thirty days.

[4] After the father went to prison the mother lived for some a period with a new boyfriend who the mother reported was domestically violent toward her.

[5] "At the present time" means the time of the termination hearing.  *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014).

## IV.  Best Interest

The mother asserts that the district court made no best interest findings. The State counters that the district court considered the best interest of I.G. in the termination order.  The district court order reads, in part:

> In a termination proceeding the state must prove the grounds for termination and in addition must prove that the termination is in the best interests of the child.  The best interest of the child is the overriding concern.  The state must meet this burden by clear and convincing evidence.  This standard denotes proof that is more than a preponderance of the evidence but less than proof beyond a reasonable doubt.  Insight as to the child's best interest "can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing."

(Footnotes omitted.)

The mother argues that the court did not make a specific finding that termination of parental rights was in I.G.'s best interest after determining the statutory grounds had been met.  Yet the mother failed to move the district court to expand the findings.  "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."  *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002); *see also A.B.*, 815 N.W.2d at 773 ("[T]he general rule that appellate arguments must first be raised in the trial court applies to [child in need of assistance] and termination of parental rights cases.").  Normal error-preservation rules apply in termination-of-parental-rights cases.  *A.B.*, 815 N.W.2d at 773.

The mother was required to file a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) to preserve error on the issue.  *See In re T.N.*, No. 02-1633, 2002 WL 31641552, at *2 (Iowa Ct. App. Nov. 25, 2002) (requiring the filing of a

rule 1.904(2) motion to preserve error on challenge to selection of guardian). Given the lack of such motion and ruling, we have nothing to review.

But if we were to elect to bypass the normal rules of error preservation, we would determine the record before us contains ample evidence that termination of the mother's parental rights is in I.G.'s best interest. We highlight the abuse inflicted on I.G. and the injuries suffered by this infant in her parental home by the father and at the complacency of the mother. While the mother initially participated in services directed at resolving the issues that brought I.G. under the district court's jurisdiction, the mother disengaged from these services. And critically, she cannot demonstrate she could protect I.G. if her parental rights remained intact.

A glimmer of hope—I.G. is in a pre-adoptive home and is reported to be meeting all milestones. While previously in physical therapy, she is now walking, and physical therapy is not needed at this time. The current relative placement intends to proceed with adoption if the mother's rights are terminated. We conclude termination of the mother's parental rights is in the child's best interest.

## V.     Extension of Time for Reunification Efforts

The mother also asserts she should be afforded additional time to work toward reunification. The court can delay permanency and give a parent six more months if it concludes the need for removal will no longer exist at the end of the extension. *See* Iowa Code §§ 232.104(2)(b), .117(5). But the mother has not preserved this issue for our review. The mother did not request an extension of time before the district court. While the HHS worker was posed a question on direct examination by the county attorney as to whether additional time would correct the situation, the district court did not rule on this issue. And the mother

failed to move under Iowa Rule of Civil Procedure 1.904. So we again have nothing to review and cannot reach the merits of this claim.

## VI. Guardianship in Lieu of Termination

Lastly, the mother argues the court should establish a guardianship in lieu of terminating her parental rights. *See id.* §§ 232.104(2)(d), .117(5). But we first address whether this claim has been preserved for our review. Despite the mother's contention in her petition on appeal that she requested a guardianship in lieu of termination, we see nowhere in the record where such a request was made.

And the district court did not rule on this potential permanency option. Like the mother's best interest argument and argument under 232.104(2)(b), we have nothing to review and do not address the merits of the mother's argument on the guardianship issue.

## VII. Conclusion

We affirm the termination of the mother's parental rights, as clear and convincing evidence supports termination on a ground relied on by the district court. The mother's claims of best interest, an extension of time for reunification efforts, and the establishment of a guardianship are not preserved for our review, and we therefore do not reach the merits of the mother's arguments on those claims.

**AFFIRMED.**